## ROBERT CHAMBERS *v.* ROBERT R. ROSS.

1. The action for use and occupation does not necessarily suppose any demise.

2. The law will imply a contract to pay rent from the mere fact of occupation, unless the character of the occupancy be such as to negative the existence of a tenancy.

3. A landlord is not deprived of his right to recover rent by a disclaimer of his relation as landlord, made under a misapprehension of his rights, where the misrepresentation has not been acted upon by the tenant nor operated in anywise to his prejudice.

---

Action for use and occupation to recover rent from 1851 to 1853. The defendant had previously occupied the premises as a tenant. He continued in possession during the time for which the rent is sought to recovered. The defence was, that, prior to the spring of 1851, Chambers had entered into a contract for the sale of the premises. A controversy having arisen about the title, the purchaser refused to execute the contract; and thereupon Chambers filed a bill for specific performance. Pending this controversy, he refused to repair the premises or to receive the rent. He denied that he was the owner of the premises,

and disclaimed his character as landlord. A verdict having been rendered for the defendant, the plaintiff obtained a rule to show cause why the verdict should not be set aside, and a new trial granted.

The rule was argued before the CHIEF JUSTICE, and POTTS and VREDENBURGH, Justices.

*Beasley*, for plaintiff, in support of the rule.

The whole case is, that the plaintiff acted under a mistaken apprehension of his legal rights.

His representation of title being in another, was not acted upon. The tenant did not pay the rent in pursuance of such representation, nor was he in anywise prejudiced by it. Under such circumstances, the landlord is not estopped from denying the truth of his own declaration.

*Hagerman*, for defendant, contra.

To support the action for use and occupation, there must be a contract, express or implied. *Chitty on Con.* 370; note; 7 *Barb. S. C. R.* 191.

A demise must be shown. *Chitty on Con.* 371, *note.*

The relation of landlord and tenant must subsist. 3 *Harr.* 214; 13 *Johns. R.* 489; 30 *Maine* 58.

From mere occupation, the law raises no promise. 32 *Maine* 138; 6 *Humphrey* 134; 21 *Maine* 525.

The CHIEF JUSTICE delivered the opinion of the court.

This was an action of assumpsit for the use and occupation of a house and lot in Princeton, from April, 1851, to April, 1853. The premises, it is admitted, belonged to the plaintiff, and were occupied by the defendant. The defendant entered and held under the plaintiff, and paid rent to him up to the 1st of April, 1851. In the spring of 1851, prior to the 1st of April, Chambers sold the premises to Tulane, the deed to be delivered at a future day. In consequence of an alleged defect of title, Tulane

refused to accept the deed, and thereupon Chambers filed a bill in chancery to compel a specific performance of the contract. During this controversy Chambers disclaimed being landlord of the premises. He refused to make repairs or receive the rent. He denied that the premises were his; said that he had no right to make repairs or receive the rent, but advised that the rent should be paid into bank. The controversy respecting the property terminated in favor of Tulane. Chambers retained the title; and thereupon brought this action for the rent. The plaintiff, at the suggestion of the Circuit Court, submitted to a nonsuit, subject to the opinion of this court upon his right to maintain the action.

It is admitted that the plaintiff owned the premises, and that they were used and occupied by the defendant. The defendant originally entered into possession under the plaintiff, as his tenant. He continued in possession as a tenant, either under Chambers or Tulane. That was the character of his occupancy. He was not there under a contract for purchase, nor as a trespasser, but as a tenant. There was no express contract between the parties, and none was necessary. The law will imply a contract to pay rent from the mere fact of occupation, unless the character of the occupancy be such as to negative the existence of a tenancy. The action for use and occupation does not necessarily suppose any demise. *The Dean and Chapter of Rochester* v. *Pierce*, 1 *Camp.* 467; *Hull* v. *Vaughan*, 6 *Price* 157; 2 *Saund. Pl. & Ev.* 890; *Chitty on Con.* 332.

Nor will the fact that Chambers disclaimed being landlord, alleging that the property was Tulane's, defeat his right of recovery. Had that representation been acted upon by the tenant, and the rent been paid to Tulane, or settled with him, Chambers would have been estopped from setting up his claim.

But he is not deprived of his right to recover by a dis-

claimer of his relation as landlord, made under a misapprehension of his rights, where the misrepresentation has not been acted upon by the tenant, nor operated in anywise to his prejudice. The rule is, that a party is not concluded by his statement or admission, unless another party has been induced to act upon this admission, and thereby to alter his previous condition. *Hearne* v. *Rogers* 9 *Barn. & C.* 577; *Pickard* v. *Sears* 6 *Ad. & E.* 474; *Gregg* v. *Wells,* 10 *Ad. & E.* 90; *Freeman* v. *Cook.* 2 *Exch.* 662; *Chitty on Con.* 5. The landlord was clearly justified, during the progress of the controversy respecting the title, in declining to lease the premises or to receive the rent. To have done either might have operated to the prejudice of his rights. The result showed that he was mistaken in denying his title to the land and his relation as landlord. The legal title was in him, and, as it proved, the equitable title also. He was therefore the landlord of the defendant, and entitled, as such, to receive the rent.

The case of *Hull* v. *Vaughan,* 6 *Price* 157, covers every point made in this case by the defendant's counsel, and goes much further. Vaughan, the defendant in that case, was the original owner of the premises. He entered into a contract for sale to one Bach, who undersold a part of the premises to Hull, the plaintiff. Vaughan subsequently refused to execute a deed for the property to Bach according to his contract. The vendee thereupon filed a bill in chancery for a specific performance. Hull, the plaintiff, had been let into possession, but Vaughan, availing himself of a rumor that he had succeeded in his defence in equity, induced Hull to give up possession, and Vaughan subsequently, during the pendency of the suit in chancery, held possession of the premises against the consent of Hull. The suit having been decided in favor of the first vendee, Vaughan accepted the purchase money, delivered the title deeds, and gave up possession. Thereupon Hull brought his action for use and occupa-

tion. He had a mere equitable title, arising out of a contract for purchase with the first vendee, who had not himself acquired a title. The defendant held the legal title. He entered into possession, not as tenant, but as the rightful owner, with the consent of the plaintiff, given under a mistaken apprehension of his rights. He subsequently held possession without the consent, and against the will of the plaintiff. On the trial, a nonsuit was ordered. But the court, at bar, held unanimously that under the circumstances, the law would raise an implied assumpsit to pay rent for the premises, and set the nonsuit aside. The decision is in accordance with the obvious justice of the case.

That the landlord refused to make repairs, and left the premises in a ruinous condition, may be very material upon the question of damages, but cannot affect the plaintiff's right to recover, so long as the premises were habitable and were actually occupied by the defendant.

The Circuit Court should be advised to set aside the nonsuit, and grant a new trial. Costs to abide the event